IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| JAMOL MARQUISE CUYLER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CR 120-036 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Jamol Marquise Cuyler filed with this Court a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 109), Petitioner's § 2255 motion be **DISMISSED**, (doc. no. 105), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.   **BACKGROUND**

   A.   **Indictment and Pretrial Proceedings**

On May 20, 2020, the grand jury in the Southern District of Georgia charged Petitioner with one count of possession of a firearm by a prohibited person under 28 U.S.C. § 922(g)(1). (Doc. no. 1.) Petitioner faced either: (1) a maximum of ten years imprisonment or (2) a mandatory minimum sentence of fifteen years if he had three or more qualifying convictions pursuant to 18 U.S.C. § 924(e). (Doc. no. 2.) Petitioner retained Daniel Gregory Leopard as counsel. (Doc. nos. 11, 16.)

   B.     **Guilty Plea**

Pursuant to a written plea agreement, Petitioner pled guilty on May 13, 2021. (Doc. nos. 58, 59.) In exchange, the government agreed not object to a two-point reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility and, if Defendant's offense level was 16 or greater, the government agreed to move for an additional one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(b). (Doc. no. 59, p. 4.) Petitioner's plea agreement contained the following factual bases for his guilty plea:

> On or about January 14, 2020, in Richmond County, within the Southern District of Georgia, the defendant . . . knowing he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, to wit, a Kimber 45 caliber handgun, which had been transported in interstate and foreign commerce.

(Id. at 2-3.) With his signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." (Id. at 11.) By signing the Plea Agreement, Petitioner also "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, (3) the government appealed the sentence, or (4) the Court sentenced him as an Armed Career Criminal and he appealed that designation or the resulting mandatory minimum sentence. (Id. at 6-7.) Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." (Id. at 7.) Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. (Id.) Moreover, Petitioner agreed he read and carefully reviewed the plea agreement with his attorney, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual

2

basis set out therein is true and accurate in every respect." (Id. at 10.)

At the change of plea hearing, United States District Judge J. Randal Hall first confirmed no one had threatened, pressured, or forced Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. (Doc. no. 71, pp. 2, 4.) Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. (Id. at 7-10.) Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. (See id.) The government provided the factual basis for the plea, the truth of which Petitioner confirmed. (See id. at 16-19.)

Judge Hall summarized the terms of the plea agreement and explained to Petitioner that he was giving up his right to directly appeal the conviction and sentence on any ground, and Judge Hall reviewed the limited situations in which Petitioner would be entitled to appeal. (Id. at 10-11.) Judge Hall informed Petitioner that, by signing the plea agreement, Petitioner agreed "all of the facts that are contained in the Plea Agreement are true and accurate, and [he] agree[s] to be bound by all of the terms of the agreement." (Id. at 10.) Judge Hall also explained the maximum penalties for the charges to which Petitioner was pleading guilty and explained the role of the Sentencing Guidelines, emphasizing they were only advisory and not binding on him. (Id. at 11, 15-16.) Furthermore, in response to a question asked by Judge Hall, Petitioner averred no one had made him any promise or prediction he would receive a particular sentence. (Id. at 15.)

Next, the Court heard a factual basis for the guilty plea from Assistant United States Attorney Hank Syms. (Id. at 16-17.) On January 14, 2020, Richmond County Sheriff's

3

Officers responded to a confrontation at a residential address related to a traffic incident involving Petitioner. (Id. at 16.) Upon encountering Petitioner, officers learned there was a .45 caliber handgun in his waistband and took possession of the firearm. (Id. at 17.) Subsequent investigation revealed the firearm moved in interstate commerce and that Petitioner was a convicted felon, having been subject to a sentence in excess of a year of confinement. (Id.) Petitioner confirmed he was guilty of, and wanted to plead guilty to, Counts One and Five of the Indictment. (Id. at 17-18.) Judge Hall summarized the proceedings as follows:

> The Court now finds that [Petitioner] is competent and fully understands the charge against him. There is a factual basis supporting his plea -- guilty plea -- on this charge. He knows the statutory punishment that could be imposed upon a conviction of this charge. He knows his jury rights and he has knowingly and voluntarily waived those rights. His decision this morning to plead guilty to this charge was knowing, voluntary, and not the result of any force, pressure, threats or promises other than the promises made by the government in the Plea Agreement. Therefore, [Petitioner]'s plea is accepted and [Petitioner] is now adjudged guilty of count one of the indictment based upon that plea.

(Id. at 18-19.)

### C. Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's base offense level at twenty-four, pursuant to U.S.S.G. § 2K1.1. PSI ¶¶ 14, 15. Petitioner's offense level increased to twenty-six after adding a specific offense characteristic, pursuant to U.S.S.G. § 2K2.1(b)(4)(A). PSI ¶¶ 16, 20. Petitioner's offense level increased to a total offense level of thirty-three after an armed career criminal enhancement was added because Petitioner had at least three prior convictions of violent felonies which were committed on different occasions, pursuant to U.S.S.G. § 4B1.1(c)(3)(B). PSI ¶ 21.

Petitioner received fifteen criminal history points for adult criminal convictions pursuant to U.S.S.G. § 4A1.1(a): (1) a 2009 conviction for theft by receiving; (2) a 2009 conviction for terroristic threats, possession of a firearm during a crime, and possession of a sawed-off shotgun; (3) a 2009 conviction for burglary; (4) a 2009 conviction for armed robbery; and (5) a 2019 conviction for possession of cocaine. PSI ¶¶ 25-30. Petitioner received two additional points for committing the instant offense while under a criminal justice sentence. PSI ¶ 32. Accordingly, Petitioner's criminal history score of seventeen established a criminal history category of VI. PSI ¶ 33. Based on a total offense level of thirty-three and a criminal history category of VI, Petitioner's guideline imprisonment range was between 235 and 293 months. PSI ¶ 67.

At sentencing on August 30, 2021, Petitioner objected to: (1) whether Petitioner qualified under the enhanced penalties of the Armed Career Criminal Act ("ACCA") because his prior terroristic threats conviction should not be considered a violent felony; and (2) the loss of his acceptance of responsibility points due to several jail incidents. (Doc. no. 72, pp. 9, 20.) Judge Hall overruled Petitioner's objections. (Id. at pp. 69-71.) Judge Hall sentenced Petitioner to serve a 180-month term of imprisonment. (Id. at 76.) Petitioner did not file an appeal.

### D. Prior § 2255 Proceedings

On September 20, 2022, Petitioner filed his first § 2255 motion, raising two ineffective assistance of counsel claims:

(1) Counsel failed to challenge the ACCA, which was not incorporated in the indictment and failed to object; and

(2) Counsel failed to file a direct appeal after being instructed to do so.

(Doc. no. 68.)

After Respondent conceded Petitioner was entitled to an out-of-time appeal because Mr. Leopard failed to consult with Petitioner about the possibility of an appeal after sentencing, (doc. no. 87), this Court granted Petitioner's motion as to the request for an out-of-time appeal and dismissed without prejudice the motion as to the ACCA claim on March 17, 2023, (doc. no. 92; see also doc. no. 88.). The Court further vacated the original judgment and re-imposed an identical sentence, informing Petitioner he had fourteen days to file a direct appeal of his criminal conviction. (Id.)

### E.   Direct Appeal

Attorney David M. Stewart was appointed to represent Petitioner on appeal. (Doc. nos. 90, 92.) On March 24, 2023, Petitioner filed notice of his direct appeal to the Eleventh Circuit Court of Appeals. (Doc. no. 95.) Petitioner argued the district court erred in applying the ACCA because: (1) his two Georgia convictions for terroristic threats should not have applied as predicate convictions because they were not violent felonies; and (2) a jury, not the district court, should have determined that his ACCA predicate convictions occurred on separate occasions. (Doc. no. 99, p. 2.) The government moved for summary affirmance, which the Eleventh Circuit granted as to the second issue, holding Petitioner "cannot show that the district court plainly erred in conducting the separate-occasions analysis itself, as there are no cases from our Court or the Supreme Court addressing this issue." (Id. at 10.) The Eleventh Circuit denied summary affirmance as to the first issue and ordered briefing as to that issue. (Id.) On February 8, 2024, the Eleventh Circuit affirmed this Court's judgment. (Doc. nos. 100, 101.) Petitioner did not petition for a writ of certiorari in the Supreme Court. (Doc. no.

6

105, "Petition," p. 2; doc. no. 109, p. 9.)

F. **Current § 2255 Proceedings**

On August 23, 2024, filed the instant § 2255 motion to vacate, set aside, or correct his sentence. The motion and accompanying brief raises one claim, in which Petitioner asserts the sentence enhancement he received pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), is unconstitutional in light of the United States Supreme Court's decision in Erlinger v. United States, 602 U.S. 821 (2024). (Petition, p. 3.) On September 3, 2024, Petitioner filed a motion for leave to file supplemental briefing, which the Court granted. (Doc. nos. 107, 108.)

On September 27, 2024, Respondent filed a motion to dismiss, contending Petitioner's claim is barred by the collateral attack waiver in his plea agreement; Erlinger announced a new procedural rule that is not retroactive to cases on collateral review; because Erlinger is not retroactively applicable, Petitioner's claim is untimely; and, alternatively, Petitioner fails to show actual prejudice. (See generally doc. no. 109, "Resp't's Mot. to Dismiss.") On October 24, 2024, Petitioner filed a response in opposition to the motion, reiterating the same arguments as his motion and briefing. (Doc. no. 111, "Pet'r's Resp. Br.")

II. **STANDARD**

A prisoner may move under 28 U.S.C. § 2255 to vacate, set aside, or correct a federal sentence imposed in violation of the Constitution or laws of the United States, imposed by a court lacking jurisdiction, exceeding the maximum authorized by law, or otherwise subject to collateral attack. However, the collateral relief available under § 2255 is limited, as the statute "does not provide a remedy for every alleged error in conviction and sentencing." Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014). Rather, "relief under 28 U.S.C. § 2255

7

'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)).

## III. DISCUSSION

### A. Petitioner's Claim is Barred by the Valid Collateral Attack Waiver in His Plea Agreement

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement, signed and verified by Petitioner, explicitly set forth that he was voluntarily waiving his right to collaterally attack his conviction and sentence on any

8

ground other than ineffective assistance of counsel. (Doc. no. 59, p. 7.) The sole exception to the waiver does not apply because Petitioner's claim his ACCA sentencing enhancement is unconstitutional following Erlinger raises no issue of ineffective assistance of counsel. Judge Hall reviewed the collateral attack waiver provision in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms. (Doc. no. 71, pp. 11-12.)

"Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and his claims fall within the scope of the waiver. Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims. See Benitez-Zapata, 131 F.3d at 1446 (enforcing knowing and voluntary appeal waiver to bar a 5K1 claim); Patel v. United States, 252 F. App'x 970, 974-75 (11th Cir. 2007) (enforcing knowing and voluntary appeal waiver to bar last-minute attempt to escape effect of appeal waiver on valid knowing and voluntary guilty plea); Hung The Pham v. United States, No. 1:05-CR-543-15, 2014 WL 1292834, at *1 (N.D. Ga. Mar. 31, 2014) (enforcing knowing and voluntary appeal waiver to bar a fair trial claim).

**B. Petitioner's Collateral Attack Waiver Is Enforceable Because His Guilty Plea Was Knowing and Voluntary**

Having determined that Petitioner knowingly and voluntarily waived the right to attack his sentence and conviction on direct appeal or by collateral attack in her § 2255 motion, the Court turns to the knowing and voluntary nature of the guilty plea. For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a

waiver contained within that plea agreement." Vaca-Ortiz, 320 F. Supp. 2d at 1365 (citing Bushert, 997 F.2d at 1350-51).

### 1. Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea. United States v. Broce, 488 U.S. 563, 569 (1989). In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). The Eleventh Circuit has described the requirements for a valid guilty plea as follows: "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997) (internal quotations and citations omitted). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or if a defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id. (quoting Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976)). Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion,

10

(2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Hall's Colloquy with Petitioner Satisfied the Core Principles

Judge Hall reviewed the firearm possession charge against Petitioner and confirmed Petitioner had sufficient time to review the charges with his attorney, Mr. Leopard. (Doc. no. 71, pp. 6-7.) Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. (Id. at 7-13.) Petitioner testified that other than the promises the government made in the plea agreement, no one acting on behalf of the government had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. (Id. at 10, 19.) Judge Hall reviewed the appellate and collateral-attack waivers contained in the plea agreement, which Petitioner stated he understood, and further confirmed Petitioner had no questions concerning the waivers. (Id. at 10-12.)

Additionally, Judge Hall informed Petitioner of the possible penalties he faced upon conviction, including a maximum of ten years of imprisonment. (Id. at 12.) Judge Hall further explained, however, that if it were determined Petitioner had "three previous qualifying convictions or crimes of violence and/or drug trafficking crimes," he would face enhanced

11

penalties upon conviction, including a minimum of fifteen years of imprisonment. (Id.) Judge Hall reminded Petitioner that he could still sentence Petitioner above or below the guidelines and he stated that he understood. (Id. at 15.) Finally, Petitioner testified he had carefully reviewed the charge, indictment, and plea agreement with Mr. Leopard and was satisfied with the representation he had received from Mr. Leopard. (Id. at 7, 10; see also doc. no. 59, p. 8 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 10 ("I have read and carefully reviewed this agreement with my attorney.").)

"[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74; see United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"); see also United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court explaining "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea").

The thorough plea colloquy, as discussed above, ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019; Patel, 252 F. App'x 974-75. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to

12

the firearm possession charge. Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's claims.

### C. Even if the Collateral Attack Waiver Did Not Bar Petitioner's Claim, Erlinger Is Not Retroactively Applicable and thus Provides No Basis for Relief

Petitioner argues the ACCA sentencing enhancement he received is unconstitutional under the Fifth and Sixth Amendments following Erlinger, which held that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), the question of whether predicate offenses occurred on separate occasions is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. Erlinger, 602 U.S. at 834-35.

However, even if Petitioner's claim was not barred by the valid collateral attack waiver, Erlinger provides no basis for Petitioner to challenge his ACCA sentencing enhancement because the Supreme Court has not made it retroactively applicable to cases on collateral review, nor does the test set forth in Teague v. Lane, 489 U.S. 288, 301 (1989), lead to the conclusion that Erlinger applies retroactively. See generally id.; see also id. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the Teague rule will presumably bar the defendant from raising today's new rule in collateral proceedings."); Grant v. United States, No. 8:24-CV-02029, 2024 WL 4729193, at *3 (M.D. Fla. Nov. 8, 2024) ("Here, 'the Teague inquiry easily leads to the conclusion that Erlinger announced a new rule of criminal procedure that is not retroactive.'" (quoting Ursery v. United States, No. 3:22-CV-00776, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024))).

Moreover, other courts in the Eleventh Circuit and elsewhere have unanimously found Erlinger does not apply retroactively in § 2225 proceedings. See Byron v. United States, No. 1:21-CR-20553, 2025 WL 786282, at *8 (S.D. Fla. Mar. 12, 2025) (collecting cases for

proposition that "Erlinger does not apply retroactively"); Allen v. United States, No. 8:18-CR-526, 2025 WL 755186, at *4 (M.D. Fla. Mar. 10, 2025) (same); Stackhouse v. United States, 8:18-cv-772, 2024 WL 5047342, at *7 (M.D. Fla. Dec. 9, 2024) ("The Court agrees with the United States that 'Erlinger is not retroactive.'"); Grant, No. 8:24-cv-2029, 2024 WL 4729193, at *2-4 (same); see also Johnson v. United States, No. 1:24-CV-831, 2025 WL 731966, at *10 (W.D. Mich. Mar. 7, 2025) ("Erlinger announced a new procedural rule that does not retroactively apply to Defendant's case."); United States v. Abney, No. CR 5:18-133, 2024 WL 5055827, at *3 (E.D. Ky. Dec. 10, 2024) ("But even if [Petitioner] had not waived the right to attack his conviction, the [Petitioner] would still fail on his claim because Erlinger does not apply retroactively."); cf. In re Jenkins, No. 24-12338, 2024 U.S. App. LEXIS 18562, *6 (11th Cir. July 26, 2024) (concluding, in § 2255(h)(2) retroactivity context, Erlinger does not apply retroactively).

Here, the Eleventh Circuit affirmed this Court's judgment on February 8, 2024. (Doc. nos. 100, 101.) Petitioner did not petition for a writ of certiorari in the Supreme Court. (Petition, p. 2; doc. no. 109, p. 9.) The Supreme Court subsequently issued its opinion in Erlinger on June 21, 2024. See Erlinger, 602 U.S. 821. Even if the collateral attack waiver did not bar Petitioner's claim—which it does—because Erlinger does not apply retroactively, Petitioner is unable to demonstrate Erlinger applies to his case or renders him eligible for relief under 28 U.S.C. § 2255.

Because the Court has determined Petitioner's claim is barred or otherwise lacks merit, the Court need not reach Respondent's contentions that Petitioner's § 2255 motion is untimely or that Petitioner fails to show actual prejudice.

## III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 109), Petitioner's § 2255 motion be **DISMISSED**, (doc. no. 105), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 21st day of March, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA